L. BUCHOLTZ v. GLADYS M. KUCHLER, *et al.*

158 So. 290 .

Division B.

Opinion Filed December 26th, 1934.

Rehearing Denied January 9, 1935.

*Rogers, Hazard & Thames,* for Appellant.

*P. L. Gaskins,* for Appellees.

BUFORD, J.—Appellant exhibited his bill of complaint in the Circuit Court of Duval County, Florida, to coerce the specific performance of a purported contract alleged to

have been made and entered into between the parties wherein as is alleged Gladys M. Kuchler, a widow, through her agent, L. B. Anderson, thereunto lawfully authorized, agreed to sell and complainant agreed to buy a certain lot of land described in the bill of complaint lying and being situate in Duval County, Florida.

The sole question presented for our determination is whether or not the paper writings relied upon constituted a binding contract as between the parties. The writings relied upon were set out in the bill of complaint and in the amended bill of complaint. Those writings were as follows:

A telegram dated January 17, 1933, from N. D. Suttles at Jacksonville, Florida, to L. B. Anderson at Winter Haven, Florida, to-wit:

"L. B. Anderson, Vice President Exchange National Bank, Winter Haven, Fla.

"Have bona fide offer twenty-six thousand, for Kuchler property cash to the mortgage, less 5 per cent commission, must have answer at once.

"N. D. SUTTLES.

"Paid and Charge N. D. Suttles, Inc."

A letter from L. B. Anderson at Winter Haven, Florida, to N. D. Suttles at Jacksonville, Florida, dated January 28, 1933, as follows:

"Winter Haven, Florida, January 28th, 1933.

"Mr. N. D. Suttles, 301 West Forsyth St., Jacksonville, Fla.

"Dear Mr. Suttles: We received a wire today from Mr. Johnson advising that the prospective purchaser of the Kuchler garage property desired a definite reply by Monday, the 30th, regarding his offer.

"Because Mr. Johnson has co-operated with us during the past year in taking care of taxes, and because it seems to be his opinion that there is some danger of the accrued interest, taxes and cost exceeding the amount at which this

property might be sold, therefore we are not in a position to hold out for a higher price than the $26,000 which has been offered, and if that is the best that you can do with the sale we will agree for you to proceed.

"The new purchaser may, or may not, desire the Boatrights for tenants, but the sale should be made subject to any rights they may have under a ninety-nine year lease which is on record, but is in default. Taxes to be prorated on the 1933 millage to February 1st, and a rebate will be given us on fire insurance which has been paid, we to bring the abstract down to date, and furnish the necessary revenue stamps for the deed. Commission at 5%. On our records the property is described as 'N 5' of W½ of Lot 2 and W½ of Lot 5, Blk. 47, Hart's Map of Jacksonville,' however, Mr. Johnson has the abstracts which contain the entire story.

"We have received several letters this week from interested parties in Jacksonville, and it would seem from them that a price of from $29 to 32M would be possible even at this time, so we ask this—that you communicate with Mr. Johnson and if the two of you think it possible to secure in the near future a better price I would like for you to try it. Even if you should realize a price that would return to Mrs. Kuchler $2,500.00 net, then I would feel like she would have a little nest egg out of the property.

"Both you and Mr. Johnson know conditions in Jacksonville well, and if in your judgment the present offer is the best that can be obtained, and you believe it to the best interests of Mrs. Kuchler, then go ahead with the sale.

"Trusting you will give your very best thought and service to the matter, I am,

"Very truly yours,

"(signed) L. B. ANDERSON.

L. B. ANDERSON."

It is alleged that Mrs. Kuchler mentioned in this letter was the defendant, Gladys M. Kuchler, a widow, and owner of the property, and that in another letter to the broker, Suttles, from the defendant, Anderson, Anderson described and named the plaintiff, Bucholtz, as the proposed purchaser in the following language:

"I am just in receipt of your letter of February 9, 1933, relative to the proposed sale of the Kuchler property to Mr. L. Bucholtz—"

Another letter from Anderson to Suttles, dated Winter Haven, Florida, February 9, 1933, was as follows:

"Winter Haven, Fla., Feb. 9th, 1933.

"Mr. N. D. Suttles, 301 West Forsyth St., Jacksonville, Fla.

"Dear Mr. Suttles: You asked me to secure for you the amount of interest and other charges due on the $20,000.00 on the garage property, and I find in checking over the figures that the following amounts are due in addition to the principal:

| | |
|---|---|
| Interest on Nov. 1, 1932 | $ 700.00 |
| And int. on this amount to Feb. 1, 1933 | 9.33 |
| Int. from 11/1/32 to 2/1/33 on $20,000 | 350.00 |
| Taxes paid Aug., 1932, by C. H. Johnson | 1,232.81 |
| Interest on these taxes to 2/1/33 | 62.20 |
| State & County Taxes for 1932 | 561.78 |
| City Taxes for 1932 | 230.00 |
| Estimated Taxes, Jan., 1933 | 65.98 |
| Additional due C. H. J. | 50.00 |
| Total | $3,262.10 |

"These figures may not be exact, but are approximately correct, and to them must be added interest from Feb. 1st to the date of closing the sale. You can see from these figures that there will not be much left after paying the expense of the sale.

"If you have the sale agreements executed by the purchaser please forward them promptly as I am desirous of getting the matter completed without delay.

"Yours very truly,

"(signed) L. B. ANDERSON."

Now, it is obvious that these writings did not attain the dignity of a contract for purchase and sale because they fail to show agreement and meeting of the minds as to all the terms and conditions necessary to make a sale complete. It is indicated that there was a mortgage on the property but the writings are silent as to whether or not the proposed purchaser was to assume the payment of that mortgage or was to buy the property subject to the mortgage. The writings show that there was a ninety-year lease on the property; that the lessee was in default, but there is nothing in the writings to indicate a meeting of the minds or an agreement between the parties as to disposition to be made of that lease. There is nothing in the writings which would bind Bucholz to accept a deed tendered and pay the alleged purchase price at which the property was offered, if it was offered at any particular price, and it is elementary that unless Bucholtz became bound to accept a deed and pay for the property, then there was no contract of sale, the specific performance of which is enforceable in a court of equity.

It will be observed that the last paragraph of the letter of February 9th above quoted shows clearly that it was contemplated that a sales agreement should be executed by the purchaser and forwarded to the vendor, but there is no allegation that such sales agreement was ever executed by either party.

It, therefore, follows that the bill was without equity and was properly dismissed. Order dismissing bill of complaint should be affirmed. It is so ordered.

Affirmed.

WHITFIELD, P. J., and BROWN, J., concur.

DAVIS, C. J., and ELLIS and TERRELL, J. J., concur in the opinion and judgment.